UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cr-367-MOC

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| ANTHONY LATREL PLAYER, | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion to Reduce Sentence Pursuant to First Step Act of 2018. (Doc. No. 46). The Government has responded in opposition to the motion, and Defendant has filed a Reply. (Doc. Nos. 55, 59).

**I.     BACKGROUND**

Between December 2016 and July 2017, Defendant, a convicted felon, distributed or participated in the distribution of more than 100 grams of heroin. (Doc. No. 26 ¶¶ 6, 20). Defendant received obtained bulk quantities of heroin in New York and sold it in the area of Charlotte, North Carolina. (Id. ¶ 13).

In January 2017, Defendant sold 2 grams of heroin to Tracie Steelman, one of Defendant's regular customers. (Id. ¶ 8). Later that day, Steelman overdosed and died from heroin toxicity. (Id.). In April 2017, Defendant sold more than 15 grams of heroin to a confidential informant, conducting the transaction at a playground and placing the heroin on a piece of playground equipment during the transaction. (Id. ¶ 10). Defendant's next transaction with the informant—involving more than 26 grams of heroin—also took place near the

1

playground. (Id. ¶ 11). Other transactions took place in or near Defendant's home in Charlotte. (Id. ¶¶ 8–9, 12–13, 17–18).

In July 2017, police executed a search warrant at Defendant's home, seizing a loaded .38 caliber revolver inside the closet of the master bedroom, where they also found Defendant hiding. (Id. ¶ 15). Police also found 2 jars of marijuana, Xanax tablets, a digital scale, and a second loaded Glock .45 caliber firearm in Defendant's home. (Id.).

In December of 2017, the United States Attorney filed a Bill of Information, charging Defendant with conspiracy to distribute and to possess with intent to distribute more than 100 grams of heroin, 21 U.S.C. § 846; possessing a firearm in furtherance of a drug-trafficking offense, 18 U.S.C. § 924(c); and possessing a firearm as a convicted felon, 18 U.S.C. § 922(g)(1). (Doc. No. 1). On the same day, the parties filed a factual basis in which Defendant admitted that he was guilty of all three offenses. (Doc. No. 9). Defendant also admitted that he had previously been convicted of a felony drug offense. (Id. at 4).

Three months later, Defendant entered into a plea agreement with the United States in accordance with Federal Rule of Criminal Procedure 11(c)(1)(C) and agreed to plead guilty to all three offenses. (Doc. No. 8). In exchange for Defendant's guilty plea, the United States agreed to withdraw reliance on Defendant's prior conviction that ordinarily would have required a sentence of at least 10 years in prison, reducing the applicable mandatory-minimum sentence to 5 years. (Doc. No. 8 ¶ 5). The parties also agreed that this Court should sentence Defendant to 120 months in prison under Rule 11(c)(1)(C). (Id. ¶ 7).

This Court accepted the parties' plea agreement, and the probation office submitted a presentence report, determining that the Sentencing Guidelines advised a sentence of between 46 and 57 months in prison for the drug-trafficking and felon-in-possession offenses, without

2

Case 3:17-cr-00367-MOC-DCK   Document 60   Filed 04/25/22   Page 2 of 7

application of the mandatory-minimum sentence. (Doc. No. 26 ¶ 83). The district court was required to sentence Defendant to at least 5 years in prison for his section 924(c) offense. (Id. ¶ 81). This Court sentenced Defendant to 60 months in prison for the heroin-trafficking and felon-in-possession offenses and to a consecutive term of 60 months in prison for the section 924(c) firearm offense. (Doc. No. 29 at 2).

Since his imprisonment in 2018, Defendant has incurred 13 disciplinary citations, including a citation for threatening bodily harm in December 2021. (Inmate Discipline Data, Gov't Ex. 1). Defendant has completed four educational courses while in the Bureau of Prisons and is currently on track to obtain his GED while in prison. (Individual Needs Plan, Gov't Ex. 2).

Defendant's medical records reflect diagnoses of a chronic fracture of his wrist and posttraumatic stress disorder. (Def.'s Medical Records, Gov't Ex. 3 at 53). Those records also reflect that Defendant sold medication he had been prescribed to treat his anxiety. (Id. at 3). Defendant's medical records do not reflect a diagnosis of obesity. (See id. at 53). Defendant has received two doses of a COVID-19 vaccine. (Id. at 59).

In March 2021, Defendant submitted a request for compassionate release based on his medical conditions. (Gov't Ex. 4). The warden of his institution denied that request. (Gov't Ex. 5). Defendant now asks this Court to grant him compassionate release because of medical conditions that put him at greater risk of severe consequences should he contract COVID-19 and because if he were sentenced today, he would receive a shorter sentence. (Doc. No. 46).

## II. DISCUSSION

Once a defendant properly exhausts his administrative remedies, this Court may reduce Defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C.

3

Case 3:17-cr-00367-MOC-DCK   Document 60   Filed 04/25/22   Page 3 of 7

§ 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. That policy statement, however, was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)"). Thus, the Court is "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). The Court still may consider § 1B1.13 factors, however, because that Section "remains helpful guidance even when motions are filed by defendants." Id. at 282, fn.7. As the movant, Defendant still bears the burden of establishing that he is eligible for a sentence reduction, and that includes establishing that "extraordinary and compelling reasons" justify his request. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

**1. Defendant's request for compassionate release based on his argument that he would receive a lower sentence if sentenced today.**

4

Defendant has not alleged that he satisfies any of the criteria for compassionate release authorized in section 1B1.13, nor has he alleged any disparity between the sentence he received and the sentence "provided for under the First Step Act." McCoy, 981 F.3d at 286. Instead, he asks this Court to exercise its discretion to grant him compassionate release because his heroin-trafficking offense is not a "drug trafficking crime" sufficient to support his conviction for possessing a firearm in furtherance of a drug-trafficking offense under 18 U.S.C. § 924(c). In particular, Defendant relies on the Fourth Circuit's decision in United States v. McCollum, 885 F.3d 300 (4th Cir. 2018), holding that a conspiracy offense is not a "crime of violence" under the Sentencing Guidelines career-offender provision unless it requires an overt act. Id. at 309.

Defendant's suggestion that McCollum undermines his section 924(c) conviction is meritless. Section 924(c)(1)(A) provides for a mandatory consecutive sentence of at least five years in prison for any defendant who possesses a firearm in furtherance of a "drug trafficking crime." Section 924(c)(2) defines "drug trafficking crime" as "any felony punishable under the Controlled Substances Act, 21 U.S.C. §§ 801–904. Defendant's drug-trafficking offense of conviction—conspiracy to distribute or to possess with intent to distribute heroin—is a felony offense punishable under 21 U.S.C. § 846 of the Controlled Substances Act. At the time he was convicted and today, Defendant's drug-trafficking offense is a "drug trafficking crime" sufficient to support his section 924(c) firearm conviction. Thus, Defendant's argument that is entitled to relief under the First Step Act is without merit.

**2. Defendant's argument that he has shown an extraordinary and compelling reason to grant him compassionate release.**

Defendant has also not identified a medical condition or conditions of confinement that warrant his compassionate release. Defendant's medical records do not reflect a diagnosis of

5

obesity or any other condition that exposes him to likely severe consequences from a COVID-19 infection. Moreover, Defendant has been vaccinated against COVID-19 and therefore faces a significantly lower risk of severe consequences than he did before his vaccinations.

Even if Defendant had such a medical condition, the sentencing considerations described in 18 U.S.C. § 3553(a) weigh against his compassionate release. Defendant's history and characteristics, the serious nature of his offense conduct, the need to deter Defendant and others from future criminal misconduct, and the need to protect the public all weigh against his compassionate release. Defendant's offense conduct included the sale of large quantities of heroin, even after he sold a customer heroin just before she overdosed and died from heroin toxicity. His criminal history includes a prior heroin conviction, and since his imprisonment in the Bureau of Prisons he has received 13 disciplinary fractions over a relatively short period of time. Defendant's sentence was the result of a carefully crafted plea agreement, and Defendant benefited significantly from the United States' agreement not to seek a mandatory-minimum sentence of 10 years in prison for his drug-trafficking offense. Because Defendant has not demonstrated that he is no longer a threat to the public, thus Court declines to grant him discretionary sentencing relief.

Finally, the Court also rejects Defendant's suggestion that harsh conditions of imprisonment support his compassionate release. The conditions Defendant identifies relate to restrictions placed on inmates to control the spread of COVID-19 within the prison population, and they are a reasonable response to the threat the virus presents.

Having thus considered Defendant's motion and reviewed the pleadings, the Court enters the following Order.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 46), is **DENIED**.

Signed: April 25, 2022

Max O. Cogburn Jr
United States District Judge